C. B. MAILE v. JAMES W. PRATT, ASSESSOR OF TAXES IN AND FOR THE FIRST TAXATION DIVISION OF THE TERRITORY OF HAWAII AND H. VAN GIESON, TRUSTEE.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED APRIL 1, 2, 1907.      DECIDED APRIL 20, 1907.

FREAR, C.J., HARTWELL AND WILDER, JJ.

EQUITY—*execution sale of land set aside, when.*

An execution sale of land pending an order by a district magistrate restraining the sale, whether the order be authorized by law or not, will be set aside in equity when grossly inadequate prices were obtained.

PRACTICE—*service of district court summons—levy of execution against real property—tax suits—appointment of new collector of taxes between judgment and execution—non-averment that money sued for is for use of Territory—alias execution.*

A district court summons is properly served by delivery of a true copy to the defendant. A writ of execution is levied upon real property by posting the officer's notice of sale describing the property in three conspicuous places within the district, publishing it in a Honolulu daily newspaper during thirty days prior to sale and posting the notice upon the premises. In a suit for taxes no revivor is required upon the appointment of a new tax assessor and collector between judgment and execution. It is unnecessary to aver in such suits that the money sued for is for the use of the Territory—a second execution may be issued on a judgment for taxes within one year after return of preceding execution.

SHERIFF'S SALE TO A SUBORDINATE—*requiring cash deposit on bids by judgment debtor.*

Repeated promises of the judgment debtor to pay the judgment not having been kept the high sheriff was justified in requiring his bids at the execution sale to be accompanied by a cash deposit. A sale to the high sheriff's confidential clerk is not illegal as it does, not appear that there was fraudulent collusion between them.

OPINION OF THE COURT BY HARTWELL, J.

The plaintiff appeals from a decree dismissing his bill to set aside an execution sale of three parcels of his land valued at about $11,760 which were sold by the high sheriff July 5, 1904, to the defendant Van Gieson for sums aggregating $535. The facts material to the case which are averred in the bill and either admitted in the answer or which we find from the evidence are as follows:

The defendant Pratt, when assessor and collector of taxes, brought an action "in his official capacity" December 7, 1903, against the plaintiff in the district court of Honolulu to recover $488.60 taxes for the years 1900, 1901 and 1902. The summons, which included a statement of the claim, was issued the same day returnable December 11 and was served that day upon the plaintiff by the officer delivering to him a true copy. The plaintiff not appearing the district magistrate on December 18 adjudged him to be in default and rendered judgment against him for $540.11, the sum claimed, with the statutory penalty and costs, upon which judgment execution was issued December 19 against the personal property of the plaintiff and returned unsatisfied January 7, 1904, the officer's return setting forth that he had "Executed the within writ by making a due and diligent search within the judicial district of Honolulu, Island of Oahu, Territory of Hawaii, for personal property belonging to the within named C. B. Maile and subject to execution and no such property can be found within said judicial district." Thereafter another execution, the date of which does not appear, was issued directing levy upon the plaintiff's personal property "and if sufficient cannot be found then upon his real property" and to sell the same or so much

thereof as should be necessary to satisfy the judgment. Pursuant to the second writ certain real property of the plaintiff was advertised for sale but the execution was withdrawn upon the promise of John F. Colburn, the plaintiff's agent, that he would settle. The promise not being kept a third execution similar to the second was issued May 25, 1904, the defendant Pratt having meanwhile been succeeded by James L. Holt as assessor and collector. Before anything was done upon the third execution the plaintiff expressed to the high sheriff his surprise that his agent had not paid the judgment, saying that the money to pay it was in the agent's hands and that he desired its payment. The judgment not being paid, however, the property was advertised for sale on June 27, 1904, at noon, at which time, at the request of the agent, the sale was continued until July 5. The levy was made by posting the high sheriff's notice of it describing the property to be sold in three conspicuous places within the district and publishing it in a Honolulu daily newspaper during thirty days prior to the time appointed. According to the usual course the notice would have been posted on the premises and it may be inferred although it does not appear that this was done in this instance. June 30 the plaintiff moved the district court to recall the third, or, as it is termed, alias execution on the ground that the court had not obtained jurisdiction of his person by the service of the summons above shown; that the action was irregularly brought in the name of Pratt without averring that the money sued for was for the use of the Territory; that at the date of the alias execution Pratt was not collector and that the high sheriff had levied upon the realty without levy upon or search for personal property, which motion the magistrate denied. July 1, a new magistrate being in office, the plaintiff moved that the service of summons be quashed because not made as provided by law and for a temporary restraining order forbidding the sale under the alias execution, upon which motion the magistrate made an order that the high sheriff refrain from selling until further order of the court and set July 6 for hear-

ing the motion, requiring service of the order to be made upon the high sheriff and the attorney for Pratt, which service was made as ordered. At the sale July 5, which was made notwithstanding the order, the plaintiff's attorney protested against it on the grounds that the judgment was void because the district court had not jurisdiction of his person and because the sale was forbidden by the magistrate and announced that no purchaser could obtain a valid title and that the plaintiff would resist claim of title of any purchaser, the defendant Van Gieson who was the high sheriff's office clerk and the officer who had indorsed the return of service on the summons being present and within hearing distance. While bidding upon the second parcel was in progress the high sheriff announced that he should insist upon deposit upon fall of the hammer for each parcel then unsold of fifty per cent. of the purchase money, a condition not contained in the notice of sale and not enforced against Van Gieson, the high sheriff after the sale going with him to the bank and obtaining the money there. July 6 the plaintiff moved the magistrate to set aside the sale upon the grounds mentioned in his motion of June 30 to stay it. Both motions were denied August 15.

The prices obtained at the sale were exceedingly disproportionate to the value of the land.

The plaintiff's motions were properly denied. There was no defect in the service as the statute does not require that in district court cases a certified copy of summons be served or that the original be either read or shown. If the service had been defective the plaintiff's appearances in his motions were not special appearances for the sole purpose of objecting to defective process or to the jurisdiction of the court over his person and would properly have been held to be general appearances waiving defects and irregularities in service of process. An objection to jurisdiction over the person cannot be submitted at the same time with an objection to the jurisdiction over the subject matter. See *Fitzgerald v. Fitzgerald,* 137 U. S. 106. If the plaintiff had any defense on the merits he should

have moved to set aside the default and vacate the judgment in order to enable him to present it, but apparently he had none. He allowed the time for a writ of error to elapse and then relied on one motion after another, based upon no tenable grounds, for delaying payment of the judgment.

The execution against the personal property only was authorized by the statute providing in cases of suits for taxes that "execution may issue upon any judgment rendered in any such suit which may be satisfied out of any real or personal property of the defendant in any such suit, without other or further authority." Sec. 1269 R. L. The alias execution, issued "within one year after the return day of that which preceded it," was authorized by Secs. 1807 and 1809 R. L.

The plaintiff had been informed of the amount of the judgment and his agent had agreed to pay it the second execution having therefore been withdrawn. He was notified by the high sheriff's notice of sale, posted upon his premises, that they were proposed to be sold upon execution. The levy was sufficiently made by advertising in the newspapers and by posting the notices in public places and upon the premises. It was unnecessary to aver in the complaint, which was included in the summons in the form of a statement of the claim, that the money sued for was for the use of the Territory. Actions for taxes may be brought by the assessor "in his own name on behalf of the Territory." Sec. 1269 R. L. The appointment of the new assessor and collector, made after the first and before the third execution, did not require that proceedings be revived in the name of the new officer. "The successor of any assessor or deputy assessor shall be invested with the same powers and be subject to the same duties and liabilities as his predecessor, and shall collect all taxes then unpaid, and shall carry on any proceedings commenced by his predecessor." Sec. 1193 R. L.

The broken promises to pay the judgment justified the high sheriff in refusing to take the plaintiff's bids unaccompanied by a cash deposit. The sale to the subordinate by the high sheriff was not illegal and does not appear to have been the result of

fraudulent collusion between them. It is unnecessary to decide whether a magistrate can stay execution in a case in which he would be authorized to set aside his judgment in order to avoid injustice. He entertained the motion to do this and ordered the sale to be postponed until a day set for its hearing. The order should have been obeyed. The necessary result of selling in disobedience of the order was to deter persons from bidding. There was no reason why the sale should not have been postponed as previously had been done at the plaintiff's request.

The grossly inadequate prices brought at the sale are claimed by the plaintiff in his bill to have been the result of the protests of his representative and upon this view it might be necessary to hold that he cannot be relieved from consequences which he brought upon himself. But whether the protest had been made or not the result of deterring persons from bidding would have followed unless, indeed, the high sheriff had improperly withheld the information concerning the order forbidding the sale which was a material fact which in good faith ought to have been made known to intending bidders. Undoubtedly it was the existence of the order which made the sale disastrous. The maxim applies actus curiae neminem gravabit, no one should suffer for the act of the court not induced by his own fraud, deceit or other misconduct. The plaintiff's course prior to the sale was not such as to entitle him to consideration in a court of equity. It caused needless expense not only to himself but to the defendants and the Territory. Such practice is not to be encouraged, but orders must be obeyed unless the clearest reasons be shown for disobeying them.

The consequence of making the sale in defiance of the order and obtaining grossly inadequate prices is that the sale must be set aside and a reconveyance ordered upon the plaintiff within five days paying into court a sum equivalent to the unsatisfied balance of the judgment and the purchase money with interest and costs of court, upon which payment the decree appealed from will be reversed, otherwise it will stand affirmed.

*C. W. Ashford* and *S..H. Derby* (*C. Creighton* also on the brief) for plaintiff.

*Magoon & Lightfoot* for Van Gieson.